**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILLIAM JACKSON, | : | |
| | : | Civil Action No. 05-2339 (FLW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| FEDERAL BUREAU OF PRISONS, | : | |
| et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

> WILLIAM JACKSON, Petitioner pro se
> #13803-014
> F.C.I. Fort Dix
> P.O. Box 1000
> Fort Dix, NJ 08640

**WOLFSON**, District Judge

Petitioner, William Jackson ("Jackson"), a prisoner currently confined at the Federal Correctional Institution at Fort Dix ("FCI Fort Dix"), New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Respondents are John Nash as Warden at FCI Fort Dix, the Federal Bureau of Prisons ("BOP"), and BOP Director Harley G. Lappin.

Because it appears from a review of the Petition that Petitioner is not entitled to issuance of the writ, the Court will dismiss the Petition.  See 28 U.S.C. § 2243.

## I.   RELEVANT STATUTES AND BOP POLICY

Under federal law, the Bureau of Prisons ("BOP") is authorized to designate the place of imprisonment of federal prisoners.

> (a) Commitment to Custody of Bureau of Prisons. - A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.

> (b) Place of imprisonment. - The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise ... that the Bureau determines to be appropriate and suitable ... .  The Bureau may at any time ... direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

Federal law provides for prisoners to serve the last portion of their imprisonment under conditions that will facilitate their transition from prison life to the community.

> (c) Pre-release custody. - The Bureau of Prisons, shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last

> 10 per centum of the term to be served under conditions
> that will afford the prisoner a reasonable opportunity
> to adjust to and prepare for the prisoner's re-entry
> into the community.  The authority provided by this
> subsection may be used to place a prisoner in home
> confinement.  The United States Probation System shall,
> to the extent practicable, offer assistance to a
> prisoner during such pre-release custody.

18 U.S.C. § 3624(c).

On December 13, 2002, the Office of Legal Counsel of the United States Department of Justice prepared a Memorandum Opinion for Deputy Attorney General Larry D. Thompson on the question "whether the BOP has general authority, either upon the recommendation of the sentencing judge or otherwise, to place [a federal offender whom the BOP deems to be low-risk and nonviolent and who has received a short sentence of imprisonment] directly in community confinement at the outset of his sentence or to transfer him from prison to community confinement during the course of his sentence."

The Office of Legal Counsel ("OLC") began its analysis with a review of Federal Sentencing Guidelines provisions addressing imprisonment and community confinement and federal court opinions concluding that community confinement does not constitute "imprisonment" for purposes of these Sentencing Guidelines provisions.  The OLC progressed from this analysis to a determination that a community corrections center ("CCC") can not constitute a "penal or correctional facility" that may serve as a place of imprisonment within the meaning of § 3621(b).  If a CCC

3

were considered a place of imprisonment within the meaning of § 3621(b), the OLC reasoned, "then the time limitation in section 3624(c) on BOP authority to transfer a prisoner to a non-prison site – i.e., for a period, not to exceed six months, of the last 10% of the term of his sentence – would be rendered null with respect to community confinement."  The OLC concluded that the practice, pursuant to the BOP's interpretation of § 3621(b), of placing certain prisoners in CCC for a period longer than that mandated by the specific language of § 3624(c) was not lawful.

Based upon this OLC Memorandum Opinion, on December 16, 2002, Deputy Attorney General Larry D. Thompson sent a Memorandum to BOP Director Kathleen Hawk Sawyer advising her the that BOP's prior interpretation of § 3621(b) as including CCCs is unlawful and directing the BOP to cease placement of federal prisoners in CCCs except for the lesser of six months or ten percent of the sentence imposed on the offender.

On December 20, 2002, the BOP adopted the OLC legal opinion in a memorandum mandating that "Pre-release programming CCC designations are limited in duration to the last 10% of the prison sentence, not to exceed six months."  This "ten-percent rule" represented a reversal of long-standing BOP policy to consider prisoners for pre-release CCC placement for up to the final six months of their sentences (the "six-months rule"), regardless of the total term of imprisonment.  See, e.g., Schorr

4

v. Menifee, 2004 WL 1320898, *2 (S.D.N.Y. June 14, 2004) (and cases cited therein).  The new ten-percent rule was instituted without notice to the public and is not reflected in any BOP Program Statement.  The new ten-percent rule thereafter generated a wave of litigation from federal prisoners seeking its invalidation on various grounds.  Id. at *3 (collecting cases).

The majority of district courts had ruled that the December 2002 BOP policy was unlawful because it was based on an unlawful interpretation of the governing statutes, since it failed to recognize that 18 U.S.C. § 3621(b) gave the BOP discretion to place federal inmates in CCCs at any time during their prison term.  See Wiesel v. Menifee, No. 04 Civ. 9681, 2005 WL 1036297 (S.D.N.Y. May 2, 2005).  In addition, the only two circuit courts to have addressed the merits of December 2002 policy change both invalidated the new policy on the ground that the BOP's interpretation of the statutes is erroneous.  See Elwood v. Jeter, 386 F.3d 842, 846-47 (8th Cir. 2004)(holding that the BOP had discretion to transfer inmates to community confinement at any time during their incarceration); Goldings v. Winn, 383 F.3d 17, 23-27 (1st Cir. 2004)(holding that § 3624(c) does not prohibit the BOP from transferring prisoners to a CCC before the last 10% of their prison terms, and that § 3621(b) confers the discretionary authority upon the BOP to execute such transfers).

The Third Circuit has not addressed the merits of the December 2002 policy change.

In earlier decisions, this Court has ruled that, to the extent the December 2002 policy change failed to recognize the BOP's discretionary authority under § 3621(b) to transfer inmates to CCCs at any time during their prison terms, it was unlawful. However, the Court further opined that while the BOP may have such discretion to transfer inmates to a CCC at any time, the statute does not confer on prisoners a right to that consideration prior to his ten percent date.  Moreover, the Court found that the specific limitation of authority as mandated by § 3624(c) (the "ten percent rule") does not conflict with the general authority given under § 3621(b) with respect to CCC placement at any time for non-transitional purposes.  The BOP retains its authority to review and place a prisoner in a CCC at any time during the custodial sentence for general administrative reasons and non-transitional programs.  See Liggett v. Nash, Civil No. 04-4713(FLW)(D.N.J. Oct. 20, 2004).

This construction of the two statutes does not render any terms in either statute meaningless and further comports with the canon that "the specific governs the general."  Cf. Elwood v. Jeter, 386 F.3d at 847 (Riley, J., dissenting).

Shortly before this petition was filed, the BOP finalized an amendment to 28 C.F.R. Part 570.[2]  Effective February 14, 2005, 28 C.F.R. § 570.20 provides:

(a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement.  The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
(b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC)(also known as "halfway houses") and home confinement.

A companion rule, 28 U.S.C. § 570.21, provides:

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.  (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. §§

---

[2]  In response to the spate of litigation engendered by the December 2002 policy change, and the successful challenges to the policy change, the BOP proposed regulations governing the designation of inmates to CCCs.  See Community Confinement, 69 Fed.Reg. 51, 213 (Aug. 18, 2004).  The BOP stated, "Because various courts have held that the Bureau has discretion under 18 U.S.C. § 3621(b) to place offenders sentenced to a term of imprisonment in CCCs, the Bureau considers it prudent to determine how to exercise such discretion."  Id. at 51,213.  The proposed rule states that the BOP would "exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months."  Id.  After a period for notice to and comments from the public, the BOP published the final rule on January 10, 2005.  See Community Confinement, 70 Fed.Reg 1659 (Jan. 10, 2005)(codified at 28 C.F.R. §§ 570.20-.21).  The policy thereafter became effective on February 14, 2005.  See id. At 1669.

3621(e)(2)(A)), or shock incarceration program (18 U.S.C. §§ 4046(c))).

Here, Jackson asserts that the December 2002 policy violates federal constitutional and statutory law. However, the February 2005 Policy supercedes the December 2002 Policy, which would render petitioner's challenge to the December 2002 policy moot.[3] Thus, Jackson cannot assert that the application of the December 2002 Policy to his transfer request is affecting his rights now. See Princeton University v. Schmid, 455 U.S. 100, 103 (1982)(per curiam)(holding that where a challenged regulation is superceded by a new regulation, "the issue of the validity of the old regulation is moot, for this case has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law.'")(*quoting* Hall v. Beals, 396 U.S. 45, 48 (1969)(per curiam)).

II.  BACKGROUND

Petitioner Jackson is presently confined at the FCI in Fort Dix, New Jersey. On January 25, 2002, he was sentenced to 42 months in prison upon conviction of aiding and abetting the

---

[3] Jackson cites the December 2002 policy in his petition, and it is clear that the decision to limit his CCC placement to 10% of his prison sentence was made pursuant to the December 2002 policy. However, by the time that Jackson filed his administrative remedies, the new regulations had taken effect and any decision to limit Jackson's CCC placement would be governed by the February 2005 rules.

8

filing of false tax returns, in the United States District Court for the District of Connecticut.  Jackson began serving his prison sentence on September 3, 2003.

On September 26, 2005, Jackson received his Sentence Monitoring Computation Data Form from the Administrative Staff at FCI Fort Dix.  The Form provides for a projected statutory release date of September 18, 2006 and a pre-release preparation date ("Six Month/10% date") of May 31, 2006.  Jackson objected to the 10% limitation on his CCC placement and sought the full six months by filing administrative remedy requests.  He alleges that he has exhausted his administrative remedies under the three-tiered administrative remedy program established by the BOP.[4]

Jackson submitted his first informal remedy form to institutional staff on September 7, 2004, which was denied that

---

[4] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.

same date.  On September 8, 2004, Jackson submitted Form BP-8, which also was denied.  He filed his BP-9 Request form with the designated counselor at FCI Fort Dix on October 4, 2004.  The Warden denied Jackson's request for six month CCC placement on October 27, 2004.  Jackson then filed his BP-10 Appeal with the Northeast Regional Office, and the Regional Director, D. Scott Dodrill, denied the appeal on November 3, 2004.  Jackson appealed to the General Counsel by Form BP-11 on December 12, 2004.  A response to the administrative remedy appeal was extended from February 12, 2005 to March 4, 2005.  On April 21, 2005, Jackson received a response from the National Inmate Appeals in Washington D.C., dated March 3, 2005, denying relief as requested.  It appears, given the date of the final administrative response on appeal, that Jackson's CCC placement is now subject to the 10% limitation pursuant to the new regulation, 28 C.F.R. § 570.21, which became effective on February 14, 2005.

In his petition, Jackson contends that he should have the benefit of the full six months CCC placement, as typically allowed pursuant to long standing practice of the BOP before December 2002, which date would be March 18, 2006.  He argues that given his advanced age and the nature of his conviction, it will be impossible to find employment providing adequate pay and benefits commensurate with his prior experience.  Thus, he

10

requires the maximum time allowed to re-integrate in the community and find work to support himself and his family.

III.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).  Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief.  <u>See</u> <u>Lonchar v. Thomas</u>, 517 U.S. 314, 320 (1996); <u>Siers v. Ryan</u>, 773 F.2d 37, 45 (3d Cir. 1985), <u>cert. denied</u>, 490 U.S. 1025 (1989). <u>See also</u> 28 U.S.C. §§ 2243, 2255.

IV.   <u>ANALYSIS</u>

A.   <u>The New Regulations Are Entitled to Heightened Deference</u>

Preliminarily, this Court must determine the level of deference to be accorded the new BOP regulations. An agency's rules are entitled to a level of deference measured under one of two standards. First, a heightened deference is reserved for legislative rules that an agency issues within the scope of authority granted to it by Congress. <u>See</u> <u>United States v. Mead Corp.</u>, 533 U.S. 218, 227 (2001); <u>Chevron</u>, 467 U.S. at 842-43 n.9 (where "Congress has directly spoken to the precise question at issue," so that the "intent of Congress is clear," both courts and administrative agencies are bound by Congress's command). These rules are typically promulgated only after a notice and comment period. <u>Mead</u>, 533 U.S. at 227. Lesser deference is accorded to interpretive rules, which, although entitled to respect, will be supported only if persuasive. <u>Id</u>. at 232; <u>see also</u> <u>Chevron</u>, 467 U.S. at 843-45 (where the statutory language is silent or ambiguous on the specific issue, deference is accorded the agency's interpretation so long as it is based on a permissive construction of the statute). Here, the new BOP regulations, which became effective on February 14, 2005, is entitled to a heightened level of deference.[5] However, the

---

[5]   The new regulation or February 2005 policy was promulgated in compliance with the notice and comment rulemaking procedures required by the Administrative Procedure Act ("APA").

ultimate determination of the meaning of a statute is for the courts to resolve.  Downey v. Crabtree, 100 F.3d 662, 666 (9th Cir. 1996).  For the reasons stated below, the Court concludes that the new regulations are valid and constitute a permissive construction of the relevant statutes, 18 U.S.C. §§ 3621(b) and 3624(c).

B.  BOP Policy Reasonably Interprets § 3621(b) and § 3624(c)

1.  *The December 2002 Policy*

In this case, Jackson challenges the December 2002 policy because his pre-release preparation date was initially determined under the December 2002 policy.  He relies on recent decisions in the District of New Jersey, namely, Cestaro, et al. V. DeRosa, et al., Civil No. 04-792 (RBK); Comyns v. Miner, et al., Civil No. 04-3547 (RBK); and Scott v. Federal Bureau of Prisons, 317 F. Supp.2d 529 (D.N.J., 2004)(JEI).  These cases, which construed the December 2002 policy, held that a CCC is a place of imprisonment under 18 U.S.C. § 3621(b) and the new BOP policy

---

See Proposed Rule, 69 Fed.Reg. At 51,213 (giving notice of and requesting comments on the proposed rule); February 2005 Policy, 70 Fed.Reg. At 1659 (responding to comments on the proposed rule and adopting final rule); see also Moss v. Apker, __ F. Supp.2d __, 05 Civ. 2676 (VM), 2005 WL 1593016 (S.D.N.Y. July 6, 2005)(finding implementation of February 2005 Policy in compliance with APA procedures); Levine v. Menifee, 05 Civ.1902 (RCC), 2005 WL 1384021 (S.D.N.Y. June 9, 2005)(same); Pimental v. Gonzalez, 367 F. Supp.2d 365, 372 (S.D.N.Y. 2005).

illegally constrains the BOP's discretion under § 3621(b) to designate a CCC as the place of an inmate's imprisonment.[6]

On October 4, 2004, this Court considered another case raising similar arguments as presented by petitioner herein.  In Trudeau v. Nash, Civil No. 04-4434 (FLW), this Court found that, notwithstanding the OLC memorandum, the Respondent has the discretion, pursuant to 18 U.S.C. § 3621(b) to review and place the petitioner in a CCC at any time during petitioner's custodial sentence.  Further, this Court stated that the Respondent has the authority, if he chooses in his discretion to exercise it, to review an inmate for possible transfer to and placement in a CCC pursuant to 18 U.S.C. § 3621(b) at any time for any reason, in addition to the transitional purposes specified in 18 U.S.C. § 3624(c).  However, any transfer of the petitioner to community confinement for transitional purposes pursuant to 18 U.S.C. §

---

[6]  To the extent there are other district court opinions contrary to the opinion of this Court, they are not binding on this Court.  See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 430 n. 10 (1996).  This Court is not bound by the decisions of other judges within this district.  See Threadgill v. Armstrong World Industries, Inc., 928 F.2d 1366, 1371 (3d Cir. 1991)("there is no such thing as 'the law of the district.'  Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior 'resolution of those claims does not bar reconsideration by this Court of similar contentions.  The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another.'")(internal citations omitted).

3624(c), shall be subject to the 10% durational limitation as set forth in that statutory provision.

In reaching its determination, this Court rejected its prior conclusion that a CCC is not a "penal or correctional facility" that may serve as a place of imprisonment within the meaning of § 3621(b),[7] and found that that conclusion was not supported in the legislative history of the enabling statute itself.  See Liggett v. Nash, Civil No. 04-4713 (FLW)(D.N.J. October 20, 2004).[8]

---

[7] This Court has previously entered several opinions on the subject of the validity of the new ten-percent rule.  See Porcaro v. U.S. Bureau of Prisons, Civil No. 03-2377(FLW) (D.N.J. Dec. 12, 2003); Sutton v. DeRosa, Civil No. 04-1010(FLW) (D.N.J. April 30, 2004); Norrito v. DeRosa, Civil No. 04-610 (FLW) (D.N.J. Aug. 12, 2004); McCarrin v. Miner, 04-2741 (FLW) (D.N.J. Aug. 25, 2004).  In a recent opinion issued by the Court in Liggett v. Nash, Civil No. 04-4713 (FLW)(D.N.J. October 20, 2004), the Court revisited the issue in light of the recent federal appellate court opinions on point, see Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004).

[8] In Liggett, this Court held:

"Before 1987, the Attorney General had statutory authority to designate the place of an inmate's imprisonment.  18 U.S.C. § 4082(a)(1982).  The enabling legislation expressly stated that inmates serving a term of imprisonment could be designated to a 'residential community treatment center.' 18 U.S.C. § 4082(f)(1982).  Thus, pursuant to this authority, the Attorney General commonly designated inmates to CCCs.

On November 1, 1987, Congress transferred designation authority from the Attorney General to the BOP. Pub.L. 98-473, Title II, § 212(a)(2); 98 Stat. 2007.  Although the revised statute did not expressly cite community confinement as a place of imprisonment, such omission is not conclusive or absolute evidence that the BOP inherited less discretionary authority than the Attorney General.  Indeed, the legislative history clearly states that the BOP has the same discretion as its predecessor.  See 1984 U.S.C.C.A.N.

Accordingly, this Court held that the BOP's change in practice in 2002, as set forth in the OLC Memorandum, was based on an erroneous interpretation of § 3621(b), namely, that it mistakenly concludes that the BOP lacks discretion to review and place a federal prisoner in a CCC at any time for any reason during his custodial sentence.  Thus, the OLC's interpretation as set forth in the December 2002 policy was incompatible with the broad grant of authority under § 3621(b).

This Court also rejected the OLC's position that this broad construction of § 3621(b) would render the 10% time limitation imposed by § 3624(c), which is not to exceed six months, meaningless if CCCs are considered a penal or correctional facility.  Sections 3621(b) and 3624(c) are easily harmonized and any inconsistency between them can be reconciled by applying two canons of statutory construction.  Namely, that "courts must give effect, if possible, to every clause and word of a statute," Williams v. Taylor, 529 U.S. 362, 404 (2000), and that "the specific governs over the general," Varity Corp. V. Howe, 516 U.S. 489, 511 (1996).  See Skelskey v. DeBoo, 332 F. Supp.2d 485, 489 (D.Conn. 2004) (alternate holding); Cohn v. The Federal

---

3182, 3324; Barden v. Keohane, 921 F.2d 476, 481 (3d Cir. 1990)(noting that the amendment 'was not intended to change pre-existing law with respect to the authority of the Bureau').  Thus, from 1987 until 2002, the BOP continued the Attorney General's practice of designating prisoners to CCCs."

Bureau of Prisons, 302 F. Supp.2d 267, 273 (S.D.N.Y. 2004)
(alternate holding); Adler v. Menifee, 293 F. Supp.2d 363
(S.D.N.Y. 2003).

Section 3624(c) specifically mandates the BOP, to the extent
practicable, to allow an inmate to spend the lesser of six months
or the last 10% of his prison sentence "under conditions that
will afford the prisoner a reasonable opportunity to adjust to
and prepare for the re-entry into the community." See, e.g.,
Loeffler v. Menifee, 326 F. Supp.2d 454 (S.D.N.Y. 2004); Cohn,
302 F. Supp.2d at 271; Adler, 293 F. Supp.2d at 367-69.  Toward
this end, § 3624(c) allows home confinement as part of this
prerelease custody.  However, nothing in § 3624(c) compels pre-
release confinement in a CCC.  The statute requires only that
pre-release custody "be served under conditions that will afford
the prisoner a reasonable opportunity to adjust to and prepare
for the prisoner's re-entry into the community."  Thus, under §
3624(c), transitional pre-release custody need not take the form
of CCC placement.  See, e.g., Prows v. Federal Bureau of Prisons,
981 F.2d 466 (10th Cir. 1992), cert. denied, 510 U.S. 830 (1993);
United States v. Laughlin, 933 F.2d 786 (9th Cir. 1991); Gambino
v. Gerlinski, 96 F. Supp.2d 456 (M.D. Pa.), aff'd, 216 F.3d 1075

(3d Cir. 2000).  <u>See also</u> BOP Program Statement 5325.06 "Release Preparation Program".[9]

Therefore, this Court found that, if the transfer of a prisoner is for transitional purposes only pursuant to § 3624(c), the BOP is correct to interpret that its authority under § 3624(c) for a transitional transfer is limited to 10% of an inmate's sentence, not to exceed six months.  This specific limitation of authority as mandated by § 3624(c) does not conflict with the general authority given under § 3621(b) with respect to CCC placement at any time for non-transitional purposes.  The BOP retains its authority to review and place a prisoner in a CCC at any time during the custodial sentence for general administrative reasons and non-transitional programs.

This construction of the two statutes also does not render any terms in either statute meaningless and further comports with the canon that "the specific governs the general."  <u>Cf</u>. <u>Elwood v. Jeter</u>, 386 F.3d at 847 (Riley, J., dissenting).

Accordingly, even if Jackson's CCC placement date was initially considered under the December 2002 policy, this Court would hold that any transfer of Jackson to a CCC for transitional purposes pursuant to 18 U.S.C. § 3624(c), must be subject to the

---

[9]  However, as a matter of policy, the BOP has chosen to implement its statutory obligation through a program of CCC placement for all "eligible" prisoners.  <u>See</u> BOP Program Statement 7310.04 "CCC Utilization and Transfer Procedure."

10% durational limitation as set forth therein.  See Cohn, 302 F. Supp.2d at 271 ("under a plain reading of § 3624(c), the BOP's back end placement of an inmate in a CCC prior to the end of an inmate's sentence is expressly and unambiguously limited to a 'reasonable part, not to exceed six months, of the last 10 per centum of the term to be served'").

However, as stated earlier herein, Jackson's challenge to the December 2002 policy is rendered moot by the new February 2005 regulations.  Even though the initial decision was issued pursuant to the December 2002 policy, the BOP's response to Jackson's final administrative appeal occurred after the new regulations went into effect on February 14, 2005.  Any reconsideration of Jackson's pre-release preparation date is now governed by the February 2005 policy.  Accordingly, the February 2005 Policy supercedes the December 2002 Policy, and Jackson cannot assert that the application of the December 2002 Policy to his transfer request is now affecting his rights.  See Princeton University v. Schmid, 455 U.S. 100, 103 (1982)(per curiam)(holding that where a challenged regulation is superceded by a new regulation, "the issue of the validity of the old regulation is moot, for this case has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of

law.'")(*quoting* <u>Hall v. Beals</u>, 396 U.S. 45, 48 (1969)(per curiam)).

    2.  *The February 2005 Policy*

Because the February 2005 policy supercedes the December 2002 policy with respect to the determination of Jackson's CCC placement date, this Court must examine whether the February 2005 policy violates federal constitutional and statutory law as alleged by petitioner with respect to the BOP's categorical decision to limit Jackson's CCC transfer to 10% of his sentence as opposed to the full six months.

In essence, Jackson contends that the BOP's policy is in conflict with the express mandate of 18 U.S.C. § 3621(b), which plainly gives the BOP the discretion to transfer an inmate to a CCC at anytime during his prison term.

Congress explicitly delegated discretion to the BOP to "designat[e] the place of imprisonment or mak[e] transfers" 18 U.S.C. § 3621(b).  Section 3621(b) commits the BOP with the authority to "designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP] ... that the [BOP] determines to be appropriate and suitable.  <u>Id</u>.  To aid the BOP's discretionary authority, § 3621(b) sets forth five factors for the BOP to consider in making initial placement or transfer determinations under the statute.  18 U.S.C. § 3621(b)(1)-(5).

These five statutory factors were considered by the BOP when developing the new February 2005 policy.  See Proposed Rule, 69 Fed.Reg. at 51,214 ("In deciding to limit inmates' community confinement to the last ten percent of the prison sentence, not to exceed six months, the Bureau has carefully considered all of the statutorily-specified factors, as well as the additional consideration that it identified as pertinent").  Thus, any contention that the new regulations neglect the § 3621(b) factors unreasonably is not sustained by the BOP's express proposals in formulating the new policy.  See Moss v. Apker, __ F. Supp.2d __, 2005 WL 1593016, *7 (S.D.N.Y. July 6, 2005)(disagreeing with Drew v. Menifee, No. 04-9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005) and Wiesel v. Menifee, 04 Civ. 9681, 2005 WL 1036297 (S.D.N.Y. May 2, 2005)).  Moreover, although the new policy may limit a prisoner's access to early CCC placement, it also expressly states that the BOP will continue to take into account all five statutory factors when designating or transferring federal prisoners to correctional facilities, including CCCs.  See February 2005 Policy, 70 Fed.Reg. at 1660 ("The Bureau will continue to evaluate [the factors enumerated in § 3621(b)] when making individual designations to appropriate Bureau facilities, and this rule will not adversely affect such individualized determinations").

21

Furthermore, there is nothing in § 3621(b) that regulates the weight that the BOP must give to each of the five statutory factors, even if § 3621(b) was interpreted to require the BOP to accord some weight to each factor. Nothing in § 3621(b) prohibits the BOP from considering the additional factors identified as relevant in developing the February 2005 policy. In fact, some of these new factors are specifically referenced by statute, so there is no basis to conclude that the February 2005 policy interprets § 3621(b) unreasonably. See Proposed Rule, 69 Fed.Reg. at 51,214 (for instance, the desire to avoid favoritism in making designation decisions is referenced in § 3621(b)("There shall be no favoritism given to prisoners of high social or economic status")). Finally, nothing in § 3621(b) requires the BOP to consider transferring any federal prisoner in its custody before the transitional point set forth in 18 U.S.C. § 3624(c). The fact that the BOP has the authority to consider an inmate for a CCC transfer does not confer on the inmate a right to that consideration before his 10% date under 18 U.S.C. § 3624(c). See Yip v. Federal Bureau of Prisons, 363 F. Supp.2d 548, 551-52 (S.D.N.Y. 2005); Moss, 2005 WL 1593016, *8; Paloian v. Scibana, No. 04-C-858-C, 2004 WL 3006559, *3 (W.D.Wis. Dec. 21, 2004). See also Rodriquez v. Federal Bureau of Prisons, 05 Civ. 3934 (GEL), 2005 WL 1164154, *1 (S.D.N.Y. May 16, 2005)( the court's prior order "did not purport to establish any entitlement on the

part of petitioner to any particular designation; its effect is
to restore discretion to the [BOP], not to impose judicial
control over a decision best left to the sound expertise of the
Bureau").

Thus, this Court concludes that the February 2005 policy
represents a reasonable interpretation of § 3621(b).  Finally,
the Court concludes that Congress did not express a clear intent
to limit the BOP's authority to regulate its discretion under §
3621(b) by adopting categorical rules such as the February 2005
policy, even though § 3621(b) provides for individualized
determinations.  See Lopez v. Davis, 531 U.S. 230, 243-244
(2001)("even if a statutory scheme requires individualized
determinations ... the decisionmaker has the authority to rely on
rulemaking to resolve certain issues of general applicability
unless Congress clearly expresses an intent to withhold that
authority")(internal quotation marks omitted)(quoting American
Hospital Assn. V. NLRB, 499 U.S. 606, 612 (1991)).

In Lopez, the Supreme Court rejected a challenge to the
BOP's categorical rule excluding certain inmates from a
discretionary early release program.  This Court finds no
significant distinction between the situation in Lopez and the
issue in this case.  Here, the BOP has identified a category of
inmates – those who have not reached their 10% date for
transitional CCC placement under § 3624(c), but may be eligible

under § 3621(b) - and created a rule denying CCC transfers to all of them.  As shown above, this categorical rule does not conflict with an identified directive of Congress.  See Yip, 363 F. Supp.2d at 552; Moss, 2005 WL 1593016 at *6.  Thus, this Court concludes that the February 2005 policy is a lawful exercise of the BOP's discretion under § 3621(b), and Jackson's challenge to the new policy as contrary to the intent of Congress is rejected.[10]

_____

[10]  The Court notes that the February 2005 rule has been invalidated by some district courts in the Second and Ninth Circuits.  See, e.g., Wiederhorn v. Gonzales, No. 05-360, 2005 WL 1113833 (D.Or. May 9, 2005); Pimental v. Gonzalez, 367 F. Supp.2d 365 (E.D.N.Y. 2005); Paige v. United States, 369 F. Supp.2d 1257 (D. Mont. 2005); Cook v. Gonzales, No. 05-09, 2005 WL 773956 (D.Or. April 5, 2005); Drew v. Menifee, No. 04-9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005).  But a fairly equal number of cases (although limited to the Southern District of New York, but different district judges) have ruled to the contrary, concluding that the February 2005 policy is valid.  See Troy v. Apker, 05 Civ. 1306 (GEL), 2005 WL 1661101 (S.D.N.Y. June 30, 2005)(finding that the BOP has the authority to categorically exercise its discretion regarding CCC transfers and upholding the validity of the February 2005 rule); Moss, 2005 WL 1593016 (same); Yip, 363 F. Supp.2d 548 (same); Levine v. Menifee, 05 Civ. 1902 (RCC), 2005 WL 1384021 (S.D.N.Y. June 9, 2005)(same); Levine v. Apker, 05 CV 3472 (CLB), 2005 WL 1417134 (S.D.N.Y. May 20, 2005)(finding "no Constitutional infirmity in the exercise of categorical discretion under the circumstances where the statute calls for individualized consideration").  See also Wiesel v. Menifee, No. 04 Civ. 9681(DAB), 2005 WL 1036297 (S.D.N.Y. May 2, 2005)(upholding the February 2005 regulations, but finding their application to petitioner, who was convicted prior to the policy change, to be a violation of the Ex Post Facto Clause).  This Court adopts the reasoning of those district judges that have found the new regulations to be valid.

CONCLUSION

For the reasons set forth above, the Court concludes that the new BOP regulations, effective February 14, 2005, providing for the BOP's categorical exercise of discretion in CCC transfers, are valid. Accordingly, Jackson's petition for habeas relief will be denied. An appropriate order follows.


 s/Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Dated: July 20, 2005

25